CALABRIA, Judge.
Respondent-mother appeals from orders[1] terminating her parental rights to her minor children X.M.C. ("Xavier") and S.M.H-C. ("Sarah").[2] She contends the trial court abused its discretion in concluding termination was in the children's best interests. We affirm.
I. Factual and Procedural Background
On 20 May 2015, the Davidson County Department of Social Services ("DSS") filed petitions alleging Xavier and Sarah were neglected and dependent juveniles. DSS stated that respondent-mother had been arrested on 16 April 2015 for shoplifting while Xavier and Sarah were present. When a social worker attempted to visit the home the same day, the parents would not allow her to enter. However, the social worker observed stacks of boxes from the doorway. On 19 May 2015, the social worker attempted another home visit, but respondent-mother refused entry again because there were feces on the floor. Respondent-mother also told DSS that she had been diagnosed with bipolar disorder. DSS obtained nonsecure custody of the children and placed them in foster care.
On 6 August 2015, the trial court entered an order adjudicating Xavier and Sarah as neglected juveniles, based primarily upon stipulations by the parties. Respondent-mother was ordered to submit to random drug screens, participate in therapy, complete parenting classes, obtain and maintain a suitable residence and steady income, and comply with the recommendations of any assessments conducted as part of her case plan. The children remained in DSS custody. The court also ordered a home study on the maternal grandparents, Mr. and Mrs. M., who lived in Indiana.
On 17 February 2016, the trial court entered a review and permanency planning order. The court found that the home study on the maternal grandparents was approved and that the grandparents expressed a desire to have Xavier and Sarah placed with them if they could not return home. However, the parents were making progress on their respective case plans, and so the court set the primary permanent plan as reunification with a secondary plan of guardianship with a relative.
On 1 June 2016, the trial court entered another review and permanency planning order. The court found that respondent-mother was not making adequate progress on her case plan. However, the primary permanent plan remained reunification. The court also established visitation between the children and the maternal grandparents, including via telephone and video chat.
On 24 August 2016, the trial court entered its next review and permanency planning order. The court found that the maternal grandparents had not returned to North Carolina since 6 April 2016 and that they had minimal contact with the children. DSS also expressed concerns about Mr. and Mrs. M. based on their lack of contact as well as on respondent-mother's reports of abuse by Mrs. M. during her own childhood. Mrs. M. denied these allegations. The court changed the primary permanent plan to termination of parental rights and adoption. The secondary plan remained guardianship with a relative.
On 15 September 2016, DSS filed petitions to terminate respondent-mother's parental rights to Xavier and Sarah on the grounds of neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the children's cost of care. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2017). The petitions were heard on 27 April 2017. At the conclusion of the adjudicatory portion of the hearing, the trial court concluded all of the grounds for termination alleged by DSS existed. The court then proceeded to disposition. Respondent-mother presented the maternal grandmother as a witness and also testified on her own behalf. They testified that placing the children with their maternal grandparents would be best for the children.
On 7 July 2017, the trial court entered orders terminating respondent-mother's parental rights to Xavier and Sarah. The orders concluded that all three grounds for termination existed and that termination was in the children's best interests. Respondent-mother gave timely notice of appeal.
II. Placement With a Relative
In her sole argument on appeal, respondent-mother argues that the trial court abused its discretion by concluding that termination of her parental rights was in her children's best interests. Specifically, respondent-mother contends that the court did not give sufficient weight to the evidence that she had relatives willing to be a placement option for Xavier and Sarah. We disagree.
A. Standard of Review
"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2017). "We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson , 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "The trial court is subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason." In re D.W.C., J.A.C. , 205 N.C. App. 266, 271, 698 S.E.2d 79, 83 (2010) (internal quotation marks and citation omitted).
B. Analysis
In deciding whether terminating parental rights is in a juvenile's best interest, the trial court must consider the following criteria and make findings regarding any that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a). Dispositional findings are binding on appeal if they are supported by competent evidence. See In re A.H., C.K. , --- N.C. App. ----, ----, 794 S.E.2d 866, 879-80 (2016), disc. rev. denied , 369 N.C. 562, 798 S.E.2d 749 (2017). Respondent-mother argues that the availability of relatives who were ready and willing placements was a relevant consideration that the court improperly ignored based on unsupported findings. The dispositional portion of the termination order for Xavier included the following findings with respect to the maternal grandparents:
i. ... [T]he maternal grandparents of the minor child ... have requested placement for the minor child and her sibling. In consideration of the [maternal grandparents] as a potential relative placement, this Court finds that the first time the [maternal grandparents] met [Sarah] was in April of 2016, when she was over one and a half years old; that the [maternal grandparents] did not come to visit the minor children until April 2016, even though the [maternal grandparents] knew that the children had been in foster care since June 8, 2015; that though a home study was approved, the Court denied placement with the [maternal grandparents] as being contrary to the best interest of the minor children as a result of allegations of physical and emotional abuse with respect to [the maternal grandmother] and the [maternal grandparents]' general lack of contact and involvement with the minor child; that even though they were provided with reasonable opportunities to visit and maintain contact in order to establish a bond with the minor children, the [maternal grandparents] did not engage in consistent, meaningful encounters that would have fostered a bond and demonstrated sustained commitment.
j. This Court would further find that the motivations for requesting placement are uncertain and appear driven more out of a desire of [the maternal grandmother] to reconcile her relationship with the respondent/mother than out of a true desire to provide a safe, permanent home for the minor children. There is little to no emotional attachment between the minor child and the [maternal grandparents]. By contrast, the minor child [Xavier] is well-established in his foster home and in the home community of the foster parents, which he recognizes as his own. Consequently, this Court would specifically find that placement with the [maternal grandparents] would be contrary to the best interest of [Xavier] and would result in unnecessary and harmful confusion and disruption in [Xavier]'s life.
k. The Court would further find that any incidental benefit that would be gained through maintaining a connection with the biological maternal relatives would be clearly outweighed by the minor child's need for continuity in the safe, stable home environment which [he] is now provided.
l. The Court finds that there is little emotional attachment between the respondent/mother and the maternal grandmother and that they do not have a healthy relationship. The Court finds that the respondent/mother has been untruthful and embellished stories about her mother. The Court cannot find that the maternal grandmother wants what is best for the minor child, but finds that this is more about the maternal grandmother trying to re-build her relationship with the respondent/mother.
m. The Court finds that on three separate occasions, three different judges declined to place the minor child with the maternal grandparents and that placement with the grandparents was not in the minor child's best interest. The Court finds that the maternal grandparents became involved with the minor child too late and that it is impossible for there to be a significant bond between [Xavier] and the maternal grandparents due to the length of time that has passed since he was brought into the Department's care and the maternal grandparents' lack of interest or involvement with the minor child.
The court made substantially the same findings with respect to Sarah.
The trial court's findings were supported by testimony at the termination hearing. The children's foster father testified extensively about the maternal grandparents. He stated that the first time the children had face-to-face contact with the maternal grandparents was April 2016 and that, since then, Sarah and Xavier had only had five and four additional face-to-face meetings, respectively. The foster father also reported that Xavier oftentimes would not want to speak with the maternal grandparents via Facetime and that the maternal grandparents would frequently be watching television during their Facetime interactions with the children. In addition, a DSS social worker testified that the trial court had considered the maternal grandparents as a possible placement at three prior hearings and rejected them. The court then briefly questioned the social worker:
COURT: Do you know why?
WITNESS: The Court was concerned about their contact and relationship with the children.
COURT: What, that it wasn't strong enough or that it was-
WITNESS: It was not, yes.
COURT: Okay. It was sparse or-
WITNESS: They did not have a substantial relationship.
The above testimony fully supports the trial court's findings with respect to the maternal grandparents. Furthermore, these findings demonstrate that the trial court considered the maternal grandparents as a placement option, but ultimately concluded that they were not appropriate due to their lack of a substantial relationship with the children. In light of these findings, as well as the other findings regarding the specific factors enumerated in N.C. Gen. Stat. § 7B-1110(a), we cannot conclude that the court's conclusion that termination was in the children's best interests was "manifestly unsupported by reason." D.W.C., 205 N.C. App. at 271, 698 S.E.2d at 83. Since the trial court did not abuse its discretion, we affirm the termination orders.
AFFIRMED.
Report per Rule 30(e).
Judges INMAN and ARROWOOD concur.

The orders also terminated the rights of both Xavier's and Sarah's fathers. Neither father appealed.

Pseudonyms are used to protect the identity of the minor children and for ease of reading.